

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2023 MAR -3  P 2:43  CC

CAROL ~~~~~~

**FELONY**

**SEALED**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**BILL OF INFORMATION FOR FALSE STATEMENTS TO THE SMALL BUSINESS ADMINISTRATION AND THEFT OF GOVERNMENT FUNDS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO. 23-43 |
| v. | * | SECTION: SECT. M MAG. 4 |
| JAZMIN J. BOUGERE | * | VIOLATIONS: 18 U.S.C. § 1001 |
| | | 18 U.S.C. § 641 |



    *     *     *

The United States Attorney charges that:

## COUNT 1
(False Statements)

**A. AT ALL TIMES MATERIAL HEREIN:**

1. The defendant, **JAZMIN J. BOUGERE** ("BOUGERE"), was a resident of Raceland, Louisiana, within the Eastern District of Louisiana.

### The Small Business Administration

2. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

___Fee_____
___Process_____
_X_Dktd_____
___CtRmDep_____
___Doc.No._____

3. As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

<u>The CARES Act and Paycheck Protection Program</u>

4. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

5. The PPP was overseen by the SBA, which had authority over all PPP loans. Individual PPP loans, however, were issued by approved private lenders, who received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business, The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and to make affirmative certifications to be eligible for the PPP loan. For example, in the PPP loan application (SBA From 2483), the business, through its authorized representative, had to state its average monthly payroll expenses and number of employees. In addition, businesses had to provide documentation showing their payroll expenses, as part of the PPP loan application process. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

7. Among the type of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the Internal Revenue Service ("IRS") on Form 1040, Schedule C, for a given year. The lending institution or loan processor used this information and documents to calculate the amount of money the individual was entitled to receive under PPP.

8. Once a qualifying business completed a PPP application, a participating lender processed the application. If a PPP loan was approved, the participating lender funded the PPP loan using its own monies, which the SBA guaranteed. In the course of processing the PPP loan, the lender transmitted data from the loan application to the SBA, including information about the borrower, the total amount of the loan, and the identified number of employees. Prestamos CDFI, LLC was a participating lender in the PPP.

9. Proceeds from a PPP loan were legally required to be used only for certain permissible business expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance. The interest and principal on the PPP loan was eligible for forgiveness if the business spent the loan proceeds on permissible items within a designated period of time and used a certain portion of the loan toward payroll expenses.

**B.** **THE OFFENSE:**

On or about May 12, 2021, in the Eastern District of Louisiana and elsewhere, the defendant, **JAZMIN J. BOUGERE**, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the United States Small Business Administration (SBA), an agency within the executive branch of the United States, in that the defendant stated in her SBA Form 2483 PPP Borrower Application Form

to Prestamos CDFI, LLC that her business named Bougere Designz earned $79,897 for the 2020 tax year. The statements and representations were false, because, as **JAZMIN J. BOUGERE** then and there knew, Bougere Designz was a non-existent business, she did not earn $79,897 for the 2020 tax years, and the 2020 IRS Form Schedule C that she submitted in the name of Bougere Designz reflecting the earned income was a false and fraudulent document, in violation of Title 18, United States Code, Section 1001.

## COUNT 2
(Theft of Government Funds)

A.  **AT ALL TIMES MATERIAL HEREIN**:

The allegations contained in Paragraph A of Count 1 are hereby re-alleged and incorporated as though fully set forth herein.

### CARES Act Funded Unemployment Insurance Program

1.  Unemployment Insurance ("UI") was a state-federal program that provided monetary benefits to eligible lawful workers. Although State Workforce Agencies ("SWAs") administered their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments ("benefits") were intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each state sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid. Generally, UI weekly benefit amounts are based on a percentage of your earnings over a base period.

2.  In the State of Arizona, the Arizona Department of Economic Security ("ADES") administered the UI program.

3. On March 13, 2020, the President declared the ongoing COVID-19 pandemic of sufficient severity and magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501 (b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 (the "Stafford Act"). This allowed state, territorial, tribal, local government entities and certain private non-profit (PNP) organizations to be eligible to apply for public assistance.

4. On March 18, 2020, the President signed the Families First Coronavirus Response Act ("FFCRA") into law. The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. The CARES Act was signed into law on March 27, 2020. It expanded states' ability to provide UI for many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits. The CARES Act provided for three new UI programs: Pandemic Unemployment Assistance ("PUA"); Federal Pandemic Unemployment Compensation ("FPUC"); and Pandemic Emergency Unemployment Compensation ("PEUC"). AEDS administered the payments of state-federal funds under the three new UI programs for Arizona claimants.

5. In Arizona, a UI claim could be filed online on the ADES website. When an individual filed a UI claim, the ADES automatically maintained certain information regarding the filing of the claim. This information included the date and time the claim was submitted, the name of the person for whom the claim was filed, and the IP address of the computer, or ISP account, that was used to file the claim.

6. UI claimants had to answer various questions to establish their eligibility for UI benefits. Claimants had to provide their name, Social Security Number, and mailing address. The

claimants had to also identify a qualifying occupational status and/or COVID-19 related reason for being out of work.

7. After ADES accepted a UI claim, it typically deposited UI funds every two weeks in one of three ways selected by the claimant, e.g. Electronic Bill Payment ("EBP") debit card, direct deposit to the claimant checking or saving account, or physical check to be mailed via U.S. Mail.

8. When receiving regular UI benefits, claimants had to complete a recertification every two weeks, under penalty of perjury, that they remained unemployed or otherwise eligible to receive UI benefits. In addition, any wages earned by the claimant must be reported during this recertification process.

**B.    THE OFFENSE:**

On or about August of 2020, in Eastern District of Louisiana and elsewhere, the defendant, **JAZMIN J. BOUGERE**, did willfully and knowingly embezzle, steal, purloin and convert to her own use, money belonging to the United States namely, by receiving approximately $2,100 in Pandemic Unemployment Assistance in the form of unemployment benefits through the Arizona Department of Economic Security, such benefits being subsidized by the federal CARES Act, to which she knew that she was not entitled, all in violation of Title 18, United States Code, Section 641.

## NOTICE OF FORFEITURE

1. The allegations of Counts 1 and 2 of this Bill of Information are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2. As a result of the offense alleged in Count 1, the defendant, **JAZMIN J. BOUGERE**, shall forfeit to the United States pursuant to Title 18, United States Code, Section

982(a), any property, real or personal, involved in said offense, and any property traceable to such property.

3. As a result of the offense alleged in Count 2, the defendant, **JAZMIN J. BOUGERE**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offense.

4. If any of the above-described property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

                    DUANE A. EVANS
                    UNITED STATES ATTORNEY

                    _____
                    EDWARD J. RIVERA
                    Assistant United States Attorney

New Orleans, Louisiana
March 3, 2023

No. _____

# United States District Court

## FOR THE

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

vs.

JAZMIN J. BOUGERE

BILL OF INFORMATION FOR
FALSE STATEMENTS AND THEFT OF
GOVERNMENT FUNDS

Violation(s):
18 U.S.C. § 1001
18 U.S.C. § 641

Filed _____, 20 23

_____, Clerk.

By _____, Deputy

_____
Assistant United States Attorney
EDWARD J. RIVERA